**ALLIED MORTGAGE AND DEVELOPMENT COMPANY, Inc., a corporation, Plaintiff,**

v.

**LEE ACCEPTANCE CORPORATION, a corporation, and International Acceptance Corporation, a corporation, et al., Defendants.**

Civ. A. No. 4211–66.

United States District Court,
S. D. Alabama, S. D.

Feb. 25, 1970.

Robert S. Edington and Jack C. Gallalee, Mobile, Ala., for plaintiff.

E. Graham Gibbons, Mobile, Ala., for interpleader Allen Parker Co.

Leo A. Smith, Jr., Mobile, Ala., for interpleader Associates Disc.

Bert S. Nettles, Mobile, Ala., for interpleader Midland-Guardian.

Herbert P. Feibelman, Jr., Mobile, Ala., for interpleader Certain-Teed.

Thomas A. Johnston, III, Mobile, Ala., and Grant, Spears & Duckworth, Atlanta, Ga., for Commercial Mortgage.

Ralph Holberg, III, Mobile, Ala., for Loyal American Life Ins. Co.

Hamilton, Butler, Riddick & Latour, R. P. Denniston, Mobile, Ala., for Lee Acceptance Corp.

Ronald P. Slepian and Francis M. Thigpen, Mobile, Ala., for GAC Trans-World Acceptance Corp.

## ORDER

PITTMAN, District Judge.

This action was commenced on August 9, 1966, with a complaint filed by Allied Mortgage and Development Company, Inc., against Lee Acceptance Corporation and International Acceptance Corporation, seeking damages for breach of an agreement. Jurisdiction rests on diversity of citizenship and amount. The facts pertaining to the stipulation are as follows:

On December 19, 1963, plaintiff by stipulation entered into an agreement with Lee Quality Homes Corporation, Lee Acceptance Corporation, and International Acceptance Corporation to establish a procedure to determine the

liability of Lee Quality Homes Corporation and International Acceptance Corporation for net losses incurred on obligations of Lee Quality Homes Corporation. Said agreement was approved by the Bankruptcy Court. Thereafter, Lee Quality Homes Corporation, in a Chapter XI proceeding was relieved of its obligations, and Lee Acceptance Corporation assumed those obligations by a written instrument filed in the Bankruptcy Court. Under this stipulation, confirmed March 26, 1964, in said Chapter XI proceedings, Lee Acceptance Corporation assumed certain obligations to Class VII creditors and agreed:

"All of the right, title and interest on the part of the Debtor and/or Lee Acceptance Corporation in and to the various reserves held by any creditor of the debtor with respect to claims falling into Group VII under said Plan of Arrangement shall be utilized fairly and without discrimination by said Lee Acceptance Corporation in and about meeting its recourse obligations to the said creditors in Group VII from time to time, in its sound discretion, and not for other or different purposes."

Lee Acceptance made its assumption "subject, however, to the provisions of any stipulation filed herein and approved by the Court, affecting Group VII Creditors, and to the general usages and customs in the trade."

There was an assignment by Lee Quality Homes or its successor, Home Construction Corporation of America, to Lee Acceptance Corporation of any and all reserves and hold-backs in the hands of any and all finance companies to which it may have been entitled on, to wit, March 26, 1964, (which was confirmed by instrument dated March 31, 1969) and said assignment was accomplished pursuant to the letter and spirit of the stipulation and plan of arrangement heretofore referred to in the Chapter XI proceeding.

The two defendants made answer to the complaint and Lee Acceptance through its answer interpleaded Loyal American Life Insurance, Ranchers Life Insurance Company (now Allen Parker Company), Pioneer Finance Company, Midland Guardian of Pensacola, Inc., Associates Discount Corporation, Certain-Teed Products Corporation, Commercial Mortgage and Finance Corporation, and G.A.C. Trans-World Acceptance Corporation.

In the counterclaim for interpleader Lee Acceptance averred that if it was found liable to the plaintiff, the only asset of Lee with which to make payments consisted of the various reserve and holdback rights owned by Lee Acceptance together with those acquired from Lee Quality Homes, as heretofore mentioned, that the interpleaded parties might have claims against Lee by way of recourse liability of the same nature as those claimed by plaintiff, therefore, in order to avoid a multiplicity of suits and the possibilities of Lee being subjected to double liabilities as to the rights of the various parties to the reserves and hold-back rights, Lee interpleaded the defendants.

It was agreed that if Lee Acceptance Corporation had any assets, including hold-backs or reserves due to it from any of the parties hereto after application of such hold-backs or reserves on obligations for which they are security, then they should be divided among the parties hereto as the court may determine. These parties have agreed on a pro rata distribution as hereinafter set out.

Lee Acceptance has tendered all reserves into court.

Default judgments were rendered against two of the interpled defendants, Pioneer Finance Company and G.A.C. Trans-World Acceptance Corporation.

On September 15, 1969, a summary judgment was entered against Associates Discount which was later followed by a stipulation of all the parties excluding further liability of Associates regarding any other reserves claimed in this case.

On October 8, 1969, a hearing was had on the merits of the case. On December 17, 1969, the court entered an order determining the claims and liabilities of the remaining parties with the exception of the dispute regarding the funds claimed to be owed by Midland-Guardian of Pensacola, Inc. The case was further argued and submitted January 6, 1970.

FINDINGS OF FACT ON THE THIRD-PARTY CLAIM FOR INTERPLEADER OF LEE ACCEPTANCE CORPORATION AGAINST THIRD-PARTY DEFENDANT MIDLAND GUARDIAN OF PENSACOLA, INC.

Hereinafter "Lee" will be used to refer to Lee Acceptance Corporation, its predecessors in right, title, and interest, and to those who have succeeded to Lee Acceptance Corporation's corporation, rights, title, and interests, "Midland Guardian" will be used to designate the third-party defendant Midland Guardian of Pensacola, Inc., its predecessors in right, title, and interest and its successors in right, title, and interest, if any.

The initial business dealings between Lee and Midland Guardian contemplated the selling of mortgages and notes, hereinafter referred to as "paper", by Lee to Midland Guardian with certain provisions of recourse. The agreements provided that on the receipt of paper Midland Guardian would pay Lee $.641 on each $1.00 of paper, and, in return, Midland Guardian would collect the installment payments provided for therein.

These transactions involved numerous mortgages and notes in large sums of money. At given periods of time Midland Guardian held over $2,000,000 of Lee's paper.

On November 8, 1960, there was an agreement between Lee and Midland Guardian wherein Lee agreed to make a $25,000 cash deposit for security of losses which might be incurred by Midland Guardian (see Midland Guardian's Exhibit #2). This $25,000 was placed in a "reserve" as security against uncollected payments due on Lee's paper which was not examined or selected by Midland Guardian prior to receiving it from Lee. This $25,000 cash deposit was paid into the reserve by Lee.

As part of the general arrangement, but not incorporated in the November 8, 1960, agreement above referred to, Midland Guardian would deduct 5% from all collections and place it in a "reserve" to Lee's credit. Midland Guardian was to charge off against the "reserve" any losses incurred in collecting the installment payments on Lee's transferred paper, such as attorneys' fees, and charges calculated under the industry term "the rule of 78's," an industry-wide accepted rule for collection charges, against "reserve."

The arrangement further provided that if any of the paper became two or more months delinquent, i. e., in arrears, Lee would exchange with Midland Guardian new and different paper, dollar for dollar. In 1963 Lee encountered serious financial difficulties and on the 9th day of August, 1963, Chapter XI bankruptcy proceedings were commenced by Lee. Lee ceased to function as an operating business and is being liquidated. As a result, Lee was no longer in a position to exchange new paper for delinquent paper in the possession of Midland Guardian.

Midland Guardian was forced by these circumstances into a situation not anticipated by their agreements. Midland Guardian was unable to furnish evidence as to the approximate amount of Lee's paper they held at this time, but the tendency of the evidence is to indicate it amounted to several hundred dollars face value. Lee, and claimants against Lee for any recovered amounts against Midland Guardian, seek to ascertain what amount, if any, is in Midland Guardian's "reserve" account to the credit of Lee to which Lee would be entitled at this or at such future time as the remaining paper in Midland Guardian's hands is collected, liquidated, or reduced.

To properly ascertain the amount in the "reserve" account, it is necessary to ascertain the amount of cash therein and the correctness of charges made by Midland Guardian against it.

Midland Guardian has charged against this "reserve" to its benefit Lee paper charged off as profit and loss (P & L) and several items designated as collection expenses. Lee, and the other claimants against Lee who would share in any recovery by Lee from Midland Guardian, dispute these charge-offs. Midland Guardian contends the charges to their benefit against the "reserve" are proper. Midland Guardian also holds Lee paper on which collections are still being made. The longest installment payments called for in the paper have approximately 78 additional months to run.

Lee, et al., in addition to seeking to determine the status of the reserve account, seek to ascertain the face value of Lee paper being collected. Lee, et al., further seek to have Midland Guardian pay into court for distribution to them and the claimants against Lee (a pro rata distribution between these parties has been agreed upon) all monies in the "reserve" in excess of the face amount of the Lee paper Midland Guardian continues to collect upon.

Midland Guardian contends that its Exhibit #2 provides that there should be held in the "reserve" an excess of $25,000 over the face amount of the paper on which they continue to collect as long as there is any uncollected paper not charged off, that is to say, even if one dollar is uncollected.

The "reserve" account will be examined first. It is agreed between the parties that there is $4,486 in this account over and above all charges against the "reserve" to Midland Guardian's benefit. There are expenses which have been termed added expenses such as attorneys' fees, recording fees, foreclosure, etc. in the amount of $2,-950 which the court is reasonably satisfied and to which Lee, although not admitting, does not seriously controvert, has been properly charged against the "reserve" account by Midland Guardian.

In a recapitulation made by a Midland Guardian auditor approximately four months before trial date, for the first time added charge-offs in the amount of $8,461; expense of collection, (1) Deas' salary $3,075, and (2) Deas' expenses $4,771, totaling $16,307. There are no supporting vouchers for any of these expenses.

In this audit, an additional expense item in this recapitulation was a 35.9% collection charge.

None of the above charges against Lee appear in the company's regular bookkeeping records.

Midland Guardian also charged against the "reserve" P & L accounts in the amount of $15,575. The evidence is clear that most of these accounts are still active and are being collected by Midland Guardian.

At the beginning of this lawsuit Lee paper which Midland Guardian was collecting, and for which the "reserve" was to be a security, totaled over one hundred thousand dollars. It is agreed between the parties that the face amount of the paper which Midland Guardian is now collecting over and above the P & L accounts is $49,612 and the last installment is due approximately 78 months hence. Lee contends that of this amount there is paper totaling $14,678.-05 of re-negotiated paper, i.e., Lee paper for which Midland Guardian negotiated new agreements, either with the original payors or new and different payors, and for which Midland Guardian had no authority to renegotiate, therefore, the Lee "reserve" in Midland Guardian's possession should not be held as security for this paper.

## CONCLUSIONS OF FACT AND LAW

The court finds the reserve held by Midland Guardian for Lee and the accounts Midland Guardian is collecting

for which the reserve is held as security, to be as set out in the table as follows:

RESERVE HELD BY MIDLAND
GUARDIAN FOR LEE

| | | | |
|---|---|---|---|
| I. | A. | Cash | 4,486 |
| | B. | Face Amount Paper Charged Off as Profit and Loss | 15,575 |
| | C. | Improper Added Charge-Offs by Midland Guardian | 8,461 |
| | D. | Improper Charges by Midland Guardian | |
| | | Expense of Collection: | |
| | | (1) Deas Salary | 3,075 |
| | | Deas Expense | 4,771 |
| | | (2) Excess Collection Charge | 471.58 |
| | | (Difference between 35.9% claimed and 33⅓% allowed by court) | |
| | | Total Reserve Funds | 36,839.58 |

ACCOUNTS MIDLAND GUARDIAN IS COLLECTING
FOR WHICH THE RESERVE IS
HELD AS SECURITY

| | | | |
|---|---|---|---|
| II. | A. | Face amount of paper, Present Balance | 49,612.00 |
| | B. | Face amount, supra I.B, P & L | 15,575.00 |
| | | Total Accounts held by Midland Guardian | 65,187.00 |

The "reserve" is less than the face amount of the paper held, therefore, there is no money to be distributed at this time by Midland Guardian.

The cash item in "reserve", I. A. was agreed to be correct. In I. B. the court has transferred the P & L accounts, which are still active and being collected, back to the II. B. The balance of paper being collected by Midland Guardian is set out in II. A.

The added expenses of Midland Guardian in the amount of $2,954 was a proper charge against the "reserve" by them.

I. C and I. D(1), as shown on the table were improper charge-offs by Midland Guardian and have been added to the "reserve" account.

■ The charge of 35.9% claimed by Midland Guardian against the "reserve" in the amount of $6,596 is excessive. The court finds that because of the unanticipated position Mid-

land Guardian was placed in by their inability to exchange old paper for new paper, dollar for dollar, they should be allowed reasonable expenses for collecting over and above the existing agreements in the amount of 33⅓% allowed by the court which is added to the "reserve".

■ To permit all of the charges made by Midland Guardian would be unconscionable in that the charges made, together with the original discount of 35.9%, would exceed 80% of the face amount of the paper collected.

The custom and usage in collecting paper of this nature is that paper will not be charge-off to a profit and loss account prior to foreclosure or repossession.

■ The court further finds that Midland Guardian has a fiduciary relationship to Lee. The original pleadings, and answers to interrogatories, in this case reflect that this relationship has been breached in that the first answers reported no reserves, whereas, the totals hereinabove set out reflect there were considerable reserves to Lee's credit. The court further holds that because of this breach and since the relationship now existing was not envisioned or anticipated by the original agreements, the contention of Midland Guardian that there should be $25,000 held in the "reserve" so long as there was one dollar of uncollected paper, is not well taken and is not sustained.

At any time the "reserve" is in excess of the face amount of the paper being collected by Midland Guardian, such excess should be paid into the court for distribution to Lee and the other claimants against Lee.

The court further finds that at any time paper is delinquent or in arrears two months, it may be charged against the "reserve" by Midland Guardian and the paper filed with the court and placed in the hands of attorneys for Lee and other claimants for collection. Any time paper is delinquent for as much

as six months, it is mandatory that this procedure be followed.

Midland Guardian is to report to the court every three months on collections and charges against the "reserve". All expenses of collection chargeable against "reserve" are not to exceed what is reasonable, nor, in any event, 33⅓%.

Any monies hereinafter paid into court by Midland Guardian on this paper is to be paid out to Lee and claimants against Lee which are parties to this suit in accordance with the decree of this court dated the 17th day of December, 1969.

The costs are to be taxed one-third against the third-party defendant Associates Discount Corporation and two-thirds against the third-party defendant Midland Guardian of Pensacola, Inc.